[No. 42785.   En Banc.   January 10, 1974.]

DAIRYLAND INSURANCE COMPANY, *Respondent,* v. PHILLIP WARD *et al., Appellants.*

*Lester T. Parker,* for appellants.

*Wayne Murray* (of *Murray, Dunham & Waitt*), for respondent.

FINLEY, J.—Petitioner, Mark Donovick, appeals from a declaratory judgment of the Superior Court for Grays Harbor County relieving the respondent, Dairyland Insurance Co., of liability for coverage and defense of a wrongful death action. The trial judge held the exclusionary provisions of a "use of other automobiles" clause precluded any duty to defend or provide coverage to the limits of the automobile liability policy issued appellant by respondent.

On October 31, 1970, Mark Donovick borrowed the 1967 pickup truck owned by his father, Mike Donovick, to transport a duck boat to Westport, Washington. While driving the pickup truck on this trip, an accident occurred in which a pedestrian, Jay J. Ward, a minor, was fatally injured. An action for damages arising out of that accident has been filed against Mark Donovick and his parents by Phillip Ward, father of the deceased child.

Dairyland Insurance Company refused to defend against the suit for damages and commenced this separate action seeking declaratory judgment determining its liability for coverage under a "use of other automobiles" clause. Section V (b) (1) of the following provision was found by the trial court to be clear and unambiguous so as to relieve the respondent of any responsibility under its policy.

V Use of Other Automobiles

If the named Insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household; owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B and C, with respect to said automobile applies with respect to any private passenger automobile subject to the following provisions:

    (a)  Under coverages A and B the word "insured" includes (1) the named Insured and spouse provided his actual operation is with the permission of the owner and is within the scope of such permission, and (2) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured (a) (1) above.

    (b)  This insuring agreement does not apply:

        (1)  to any automobile owned by or furnished for regular use to either the named Insured or a member of the same household other than a private chauffeur or domestic servant of such named Insured or spouse;

        (2)  to any accident arising out of the operation of an automobile sales agency, repair shop, service station, storage garage or public parking place;

        (3)  to any automobile while used in a business or occupation of such named Insured or spouse except a private passenger automobile operated or occupied by such named Insured, spouse, private chauffeur or domestic servant.

The sole issue for our determination is whether the exclusionary provisions of the "use of other automobiles" clause relieves the respondent of its contractual duty to defend against claims arising from the accident of October 31, 1970, and to provide liability coverage to the limits of its policy. This court has not, heretofore, been presented with an insurance provision of this type. However, we do have the benefit of the analyses and evaluations of comparable provisions of insurance policies by the courts of other jurisdictions.

Two lines of cases interpret the "use of other automobiles" clauses differently. One line of case finds the clauses unambiguous. The other line finds the clauses are ambiguous.

Apparently the bulk of decisional law follows the holding in *Aler v. Travelers Indem. Co.*, 92 F. Supp. 620 (D. Md. 1950). Therein, the insured was involved in an accident while driving a vehicle owned but seldom if ever used

personally by his 74-year-old mother-in-law. The United States District Court judge in the *Aler* case stated that the exemption clause in the insurance policy before the court

> excludes from coverage the use of any other automobile (1) owned by the insured or a member of his household or (2) furnished for regular use to the insured or a member of his household.

*Aler, supra* at 623. The trial judge in *Aler* found (1) the insured was a member of the same household, and (2) the car was furnished for the regular or frequent use of the household, including the insured, and on these two grounds held the clause operated to deny coverage to the plaintiff-insured under the provisions of the insurance policy on his personal car. The *Aler* court was not confronted solely with the fact that the insured was a member of a common household, but could rely on the additional circumstance of the insured's regular use of another car. If there had been no regular use of the nonowned car, but only the fact of its *casual* use by the insured as a *member of the common household*, it is at least arguable that the trial court would have found the clause free of ambiguity. Curiously enough, *Aler* has been cited by a number of courts to support non-coverage *on the sole ground* that the insured was a *member of a common household. See, e.g., Ransom v. Fidelity & Cas. Co.*, 250 N.C. 60, 108 S.E.2d 22 (1959); *Lontkowski v. Ignarski*, 6 Wis. 2d 561, 95 N.W.2d 230 (1959); *Leteff v. Maryland Cas. Co.*, 91 So. 2d 123 (La. Ct. App. 1956). We have considerable doubt that the case is convincing authority for this proposition.

The other line of authority construing the "use of other automobiles" clause stems from the decision of the United States Court of Appeals for the Sixth Circuit in *Travelers Indem. Co. v. Pray*, 204 F.2d 821 (6th Cir. 1953). *See also Juzefski v. Western Cas. & Sur. Co.*, 173 Cal. App. 2d 118, 342 P.2d 928 (1959). *Pray* involves a factual pattern very similar to that in the instant case. In *Pray*, a son was involved in an accident while driving his father's Cadillac. As in the case before us, the trial court found that the

insured was a member of his father's household. It was also found there was no understanding or practice between family members allowing the use of another member's automobile, *i.e.*, the father's Cadillac, but permission to use the Cadillac was occasionally requested and given by the father. The United States Court of Appeals in the *Pray* case strongly differed with the earlier grammatical interpretation of the United States District Court in *Aler,* and preferred its own grammatical construction and affirmed the lower court, which had refused to follow *Aler.*

The salient reasoning of the United States Court of Appeals in *Pray,* however, does not rest in grammatical quibbling. The court seriously questioned whether a policyholder could reasonably believe from reading the language of the exclusionary clause in his policy that *any use whatever* of an automobile owned by another member of the household would not be covered. In this regard, the *Pray* court stated:

> The insurance company . . . asserts that it was the intention of the company . . . that the . . . coverage of the insured when operating another automobile was limited to his occasional or infrequent operation of a "stranger's" automobile; and that, under no circumstances, was the insured intended to be covered when operating an automobile owned by a member of his household. We do not gather from the entire policy, including the exception provision, that the insured . . . would naturally have indulged any such remote notion. We think that an ordinary person would assume that . . . his liability would be covered when occasionally —not regularly—he used, with permission, an automobile owned by a member of his household. To assume that he would consider himself covered only when using the automobile of his, or his wife's, chauffeur or domestic servant, or the automobile of a stranger, seems extremely illogical.

*Travelers Indem. Co. & Sur. Co. v. Pray, supra* at 824-25. In large part, the decision in *Pray* rests not in the technical ambiguities arising from grammatical literalism, but in the inherent ambiguities in the clause that would lead a policy-

holder to believe his use of automobiles in varying circumstances was covered.

Virtually all courts have found it necessary to engage in a detailed grammatical interpretation to find clauses similar to the above either ambiguous or unambiguous. In the *Leteff* case, cited by respondent, two doctors of English were required to establish that a similar provision was unambiguous. The trial judge in the *Aler* case commented: "While the quoted clause is not ambiguous in meaning, it does require careful and close reading to gather its whole meaning." *Aler v. Travelers Indem. Co., supra* at 623.

■ In our opinion, the proper inquiry is not whether a learned judge or scholar can, with study, comprehend the meaning of an insurance contract, but whether the insurance policy contract would be meaningful to the layman who at his peril may be legally bound or held to understand the nature and extent of its coverage. The language of insurance policies is to be interpreted in accordance with the way it would be understood by the average man, rather than in a technical sense. *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940).

■ It is Hornbook law that where a clause in an insurance policy is ambiguous, the meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning. *Jeffries v. General Cas. Co. of America*, 46 Wn.2d 543, 283 P.2d 128 (1955); *Kane v. Order of United Commercial Travelers of America*, 3 Wn.2d 355, 100 P.2d 1036 (1940). Ambiguous exclusionary clauses, particularly, should be construed in the manner most favorable to the insured. *Brown v. Underwriters at Lloyd's*, 53 Wn.2d 142, 332 P.2d 228 (1958); *Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 472 P.2d 611 (1970).

■ We find the above clause ambiguous in a very real sense. In addition to its confusing structure, the subject clause is sandwiched into the general coverage provisions of respondent's insurance contract. It is not found in the

enumerated exclusionary provisions under the title or caption "EXCLUSIONS — This policy does not apply." We think it highly unlikely that a policyholder would, under the facts of the instant case, reasonably believe his insurance so circumscribed so as to preclude liability coverage.

The result we reach in this case does not do violence to the legitimate and understandable interests of insurers in limiting their coverage in relation to the amount of premium paid provided the language of the insurance contract is clear and unambiguous. In other words, if an insurance carrier desires to exclude any coverage whatsoever as to automobiles owned by other members of the insured's household, this should be spelled out for the policyholder in clear and unmistakable language.

The twofold purpose of the "use of other automobile" clause is: (1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the infrequent use of nonowned vehicles. R. Keeton, *Insurance Law* § 4.9 (1971); 12 G. Couch, *Cyclopedia of Insurance Law* § 45:238 (2d ed. R. Anderson 1964). The danger of the assumption of additional risks without an added premium contemplated by the clause simply does not exist in the instant case. Mark Donovick owned no other vehicles. His use of the pickup truck was found by the trial court to be infrequent. Thus, this case does not present an abuse at which the exclusionary provision was directed.[1]

---

[1]The dissent has collected and cites numerous cases, all ostensibly contrary to the majority opinion's interpretation of the "use of other automobiles" clause. However, the dissent is perhaps an overreaction and paints with too broad a brush. More specifically, the point is that most of the cases cited by the dissent do not seem to be wholly apposite, with the arguable exceptions of the holdings in *Rathbun v. Aetna Cas. & Sur. Co.*, 144 Conn. 165, 128 A.2d 327 (1956); *Leteff v. Maryland Cas. Co., supra; Simon v. Milwaukee Auto. Mut. Ins. Co.*, 115 N.W.2d 40 (Minn. 1962); *Anaya v. Foundation Reserve Ins. Co.*, 76 N.M. 334, 414 P.2d 848 (1966); *Ransom v. Fidelity & Cas. Co., supra; Lontkowski v. Ignarski, supra.* Close examination of the cases cited by the dissent yields a great number of cases in which the insured had regular usage

We find, as indicated heretofore, the exclusionary provisions of the "use of other automobiles" clause clearly ambiguous and inapplicable to the instant case. The judgment of the trial court is reversed. A declaratory judgment should be entered for the appellant. It is so ordered.

HALE, C.J., and HUNTER, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

HAMILTON, J. (dissenting)—Although I may be inclined to sympathy with the result reached by the majority, I am wholly unable to agree that the "use of other automobiles" clause here involved is ambiguous. Hence, I am compelled to dissent.

Briefly, the pertinent facts are these. Mark Donovick, a minor residing with his parents, purchased a 1962 Chevy II 4-door sedan in September 1970. He applied for, obtained, and paid for liability coverage for his automobile from Dairyland Insurance Company, hereafter referred to as Dairyland. Mike and Mildred Donovick, Mark's parents, owned and kept at the family residence a 1968 Chevrolet Impala and a 1967 Chevrolet ½-ton pickup, which Mark seldom if ever drove. Pacific Indemnity Company provided liability coverage for the Impala and the pickup truck until

of "other" uninsured or minimally insured automobiles, or was found not to be a member of a common household and was, therefore, covered for the latter reason. Thus, the dissent's lengthy compilation of cases does not address itself to the factual situation in the instant case, where *there was no regularity of usage* by a household member.

In other words, the dissent seems to overlook or misconceives the basic reasoning of the majority opinion. There is no general disagreement with most of the case authorities cited by the dissent because they presented a fact pattern or problem at which the exclusionary clause was directed, and the clause is clearly ambiguous when applied to situations where regular usage is the ultimate factor involved. Again, however, that problem is just not presented in the instant case. Cf. *Lumbermens Mut. Cas. Co. v. Pulsifer*, 41 F. Supp. 249 (D. Me. 1941). The majority simply holds that, considering the particular factual setting involved in the instant case, the policyholder could reasonably believe his casual or infrequent use or operation of a nonowned automobile was covered by liability insurance under the "use of other automobiles" provision.

July 1970, when renewal thereof was refused by that company. Thereafter, liability coverage for the Impala and the pickup truck was not obtained until November 4, 1970, 4 days after the accident giving rise to this litigation.

On October 31, 1970, Mark, with his father's permission, was driving the pickup truck in furtherance of his own purposes. He became involved in the fatal accident. Suit for damages was initiated against Mark and his parents. Defense was tendered to Dairyland which tender was refused. This litigation was then instituted to determine the extent, if any, of the coverage of the policy issued by Dairyland to Mark.

The sole issue is whether the "use of other automobiles" clause excludes or extends coverage to Mark while operating his parents' pickup truck on the occasion and under the circumstances prevailing at the time in question.

The clause in its entirety provides:

V  Use of Other Automobiles

If the named Insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B and C, with respect to said automobile applies with respect to any private passenger automobile subject to the following provisions:

(a) Under coverages A and B the word "insured" includes (1) the named Insured and spouse provided his actual operation is with the permission of the owner and is within the scope of such permission, and (2) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured (a) (1) above.

(b) This insuring agreement does not apply:

(1) to any automobile owned by or furnished for regular use to either the named Insured or a member of the same household other than a private chauffeur or domestic servant of such named Insured or spouse;

(2) to any accident arising out of the operation of

an automobile sales agency, repair shop, service station, storage garage or public parking place;

(3) to any automobile while used in a business or occupation of such named Insured or spouse except a private passenger automobile operated or occupied by such named Insured, spouse, private chauffeur or domestic servant.

Such clauses, or similarly worded ones, are not uncommon in standard automobile liability insurance policies. The obvious intent and purpose of such provisions are to provide coverage to the named insured during the occasional or incidental use of other automobiles without the payment of an additional premium, but to exclude a possible interchangeable use by the insured of other cars readily at hand, *i.e.,* cars owned by or regularly used by the insured or members of the same household but not described in the policy, thus increasing the risk of the insurance company without a corresponding increase in the premium. Annot., *Exclusion from "drive other cars" provision of automobile liability insurance policy of other automobile owned, hired, or regularly used by insured or member of his household,* 86 A.L.R.2d 937 (1962); 13 G. Couch, *Cyclopedia of Insurance Law* § 45:956 (2d ed. R. Anderson 1965); 7 Am. Jur. 2d *Automobile Insurance* §§ 105-06 (1963).

Divining this intent and purpose, a startling array of courts called upon to interpret and apply such clauses, or similarly worded ones, have either directly or tacitly found them free of ambiguity and applicable or inapplicable as the facts and circumstances in the individual cases warranted. With virtual unanimity, the exclusionary provisions of the clause, insofar as pertinent here, have been accepted as excluding from coverage cars not described in the insurance policy involved which are: (a) owned by or furnished for the regular use of the insured, or (b) owned by or furnished for the regular use of members of the same household. *American Auto. Ins. Co. v. English,* 266 Ala. 80, 94 So. 2d 397 (1957); *McKinley v. Colorado Farm Bureau Mut. Ins. Co.,* 163 Colo. 529, 431 P.2d 859 (1967); *Iowa Mut.*

*Ins. Co. v. Addy,* 132 Colo. 202, 286 P.2d 622 (1955); *Rathbun v. Aetna Cas. & Sur. Co.,* 144 Conn. 165, 128 A.2d 327 (1956); *Home Ins. Co. v. Kennedy,* 52 Del. 42, 152 A.2d 115 (1959); *O'Brien v. Halifax Ins. Co.,* 141 So. 2d 307 (Fla. Dist. Ct. App. 1962); *Rodenkirk v. State Farm Mut. Auto. Ins. Co.,* 325 Ill. App. 421, 60 N.E.2d 269 (1945); *General Leasing Corp. v. Anderson,* 197 Kan. 327, 416 P.2d 302 (1966); *Gage v. Roy,* 173 So. 2d 885 (La. Ct. App. 1965); *Sumrall v. Aetna Cas. & Sur. Co.,* 124 So. 2d 168 (La. Ct. App. 1960); *Leteff v. Maryland Cas. Co.,* 91 So. 2d 123 (La. Ct. App. 1956); *Simon v. Milwaukee Auto. Mut. Ins. Co.,* 115 N.W.2d 40 (Minn. 1962); *Goens v. Arinder,* 248 Miss. 806, 161 So. 2d 509 (1964); *Fleming v. Travelers Ins. Co.,* 206 Miss. 284, 39 So. 2d 885 (1949); *Giokaris v. Kincaid,* 331 S.W.2d 633, 86 A.L.R.2d 925 (Mo. 1960); *Anaya v. Foundation Reserve Ins. Co.,* 76 N.M. 334, 414 P.2d 848 (1966); *Vern v. Merchants Mut. Cas. Co.,* 21 Misc. 2d 51, 118 N.Y.S.2d 672 (1952); *Whaley v. Great Am. Ins. Co.,* 259 N.C. 545, 131 S.E.2d 491 (1963); *Ransom v. Fidelity & Cas. Co.,* 250 N.C. 60, 108 S.E.2d 22 (1959); *George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co.,* 220 Ore. 520, 349 P.2d 789 (1960); *Farm Bureau Mut. Auto. Ins. Co. v. Boecher,* 37 Ohio L. Abs. 553, 48 N.E.2d 895 (1942); *Grantham v. United States Fidelity & Guar. Co.,* 245 S.C. 144, 139 S.E.2d 744 (1964); *Lontkowski v. Ignarski,* 6 Wis. 2d 561, 95 N.W.2d 230 (1959); *Mercantile Bank & Trust Co. v. Western Cas. & Sur. Co.,* 415 F.2d 606 (8th Cir. 1969); *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Robertson,* 259 F.2d 389 (4th Cir. 1958), *cert. denied,* 359 U.S. 950, 3 L. Ed. 2d 683, 79 S. Ct. 735 (1959); *Voelker v. Travelers Indem. Co.,* 260 F.2d 275 (7th Cir. 1958); *Wyatt v. Cimarron Ins. Co.,* 235 F.2d 243 (10th Cir. 1956); *Campbell v. Aetna Cas. & Sur. Co.,* 211 F.2d 732 (4th Cir. 1954); *Farm Bureau Mut. Auto. Ins. Co. v. Violano,* 123 F.2d 692 (2d Cir. 1941); *American Mut. Liab. Ins. Co. v. Meyer,* 115 F.2d 807 (3d Cir. 1940); *Hancock v. Western Cas. & Sur. Co.,* 154 F. Supp. 164 (E.D. Ky. 1957); *Farm Bureau Mut.*

*Auto Ins. Co. v. Marr,* 128 F. Supp. 67 (D.N.J. 1955); *Harrill v. Motor Vehicle Cas. Co.,* 122 F. Supp. 389 (S.D. Iowa 1954); *Aler v. Travelers Indem. Co.,* 92 F. Supp. 620 (D. Md. 1950); *Lumbermens Mut. Cas. Co. v. Pulsifer,* 41 F. Supp. 249 (D. Me. 1941).

We thus have appellate tribunals in 18 states, federal courts of appeal in 6 different circuits, and at least 5 United States district courts which have encountered no problem of ambiguity in interpreting and applying standard or similar "use of other automobiles" clauses. In this vein it is interesting to note that this court, in *Palmer v. Glens Falls Ins. Co.,* 58 Wn.2d 88, 360 P.2d 742 (1961), had before it a clause similar to the one in the instant case and applied the facts of that case to the clause without difficulty and without any suggestion of ambiguity.

Only *Travelers Indem. Co. v. Pray,* 204 F.2d 821 (6th Cir. 1953) and *Juzefski v. Western Cas. & Sur. Co.,* 173 Cal. App. 2d 118, 342 P.2d 928 (1959), relied upon by the majority, seemingly stand for the proposition that such common and long accepted insurance policy clauses are ambiguous. As indicated in the annotation in 86 A.L.R.2d 937, these decisions literally stand alone in a vast sea of contrary authority and have virtually gone unheeded, except for criticism. *Leteff v. Maryland Cas. Co., supra; Lontkowski v. Ignarski, supra.*

The clause considered in *Pray* and *Juzefski* reads substantially as follows:

". . . (b) This insuring agreement does not apply: (1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household . . ."

*Travelers Indem. Co. v. Pray, supra* at 823.

The *Pray* court, in a 2-to-1 decision found this clause ambiguous because a comma had not been inserted between the phrase "or furnished for regular use to" and the phrase "the named insured." The dissent in *Pray* rightfully and authoritatively pointed out that punctuation is a most falli-

ble standard for interpretation of a writing, and is the outermost refuge in the construction of an agreement.

In *Juzefski,* likewise a 2-to-1 decision, the court found the phrase "his household" to be ambiguous, and interpreted it to mean that the insured covered by the policy would not come within the operation of the exclusionary clause unless he was the head of the household. The dissent is by far a more persuasive opinion and is supported by the weight of authority.

Both cases thus represent an extremely strained and myopic view of a clause which a substantial number of authorities heretofore cited have found to be unambiguous, as well as a tortured interpretation of a clause somewhat different from the one involved in the instant case. The majority is ill-advised in placing reliance on these cases contrary to the overwhelming flood of authority to the contrary.

The pertinent clause in the instant case is couched in plain, ordinary language and parses readily. Broken down, it simply provides:

> This insuring agreement does not apply: (1) to any automobile (a) owned by (b) or furnished for regular use to (c) either the named insured (d) or a member of the same household . . .

In my view it would be difficult to draft a clause any more concise and/or freer of ambiguity.

Finally, by way of makeweight, the majority complains of the fact that the subject clause is not found under the title or caption "EXCLUSIONS." This appears to me to be grasping for a frail straw. The policy is a standard form liability policy undoubtedly approved by the Insurance Commissioner. The subject paragraph and clause is clearly and in bold, black type headed by the paragraph number and the phrase "Use of Other Automobiles." It extends coverage as well as limiting the extended coverage. Certainly any normal policyholder, seeking to ascertain his coverage in connection with the use of another car, would encounter no difficulty whatsoever in locating the pertinent paragraph and clause. He would be more likely confused if

his extended coverage were "sandwiched" in among the exclusions, and certainly his confusion would be compounded if the limiting provisions of his extended coverage were separated from the paragraph and placed elsewhere.

Under the facts of this case, the pickup truck driven by Mark Donovick on the day of the accident indisputably belonged to a member of the same household as Mark. It, therefore, fell within the ambit of the exclusionary provisions of the "use of other automobiles" clause, and Mark's use of it was not covered by the Dairyland policy issued to him.

The judgment of the trial court should be affirmed.

STAFFORD, J., and JOHNSEN, J. Pro Tem., concur with HAMILTON, J.